GEORGE MONROE (BUCK) JONES

*v.*

STATE OF TENNESSEE.

383 S.W.2d 20.

(*Nashville,* December Term, 1963.)

Opinion filed October 9, 1964.

CHARLES F. GALBREATH, Public Defender, Nashville, for plaintiff in error.

GEORGE F. MCCANLESS, Attorney General, MARNE S. MATHERNE, Assistant Attorney General, for the State.

SPECIAL JUSTICE ROBERT S. CLEMENT delivered the opinion of the Court.

The Plaintiff in Error, George Monroe (Buck) Jones, hereinafter referred to as the Defendant, was convicted in the Criminal Court of Davidson County, Tennessee, Division I, of the offense of armed robbery and sentenced to ten years in the State Penitentiary. He was also convicted as a habitual criminal and sentenced to confinement for life in the Penitentiary. The Defendant seasonably filed a motion for a new trial which was overruled by the Trial Judge and Defendant has now appealed to this Court.

The State's proof was that the Defendant, with an unknown accomplice, went to the Medical Arts Building on 21st Avenue, South, at about 2:55 o'clock in the morning on February 18, 1963, and knocked on the steel doors in the rear of the building. That one Paul Lowe, a night watchman for the building, answered the alarm at the door, and that when he opened the door, he saw two men, each with a drawn pistol, which were "put in his stomach." That they forced Lowe to stand with his hands on the door while they searched him; that he was carried then into his office where tape was put across his eyes and nose, and his hands were taped behind him; that they then made him sit on a stool and cross his legs

and that the two men then taped his legs to the stool. That he, Lowe, was told to be quite and not fall off the stool as "you might get hurt". While Lowe was on the stool, he heard these men making a terrible noise beating on something, which lasted only a short time. That one of the men had a soft voice and he came over and touched witness on the shoulder and said: "Sit there if you know what is good for you." The watchman, Lowe, then said to them: "When you get through with what you are doing, won't you come back and untie me?" Lowe testified that the last he heard of the men was when a steel door closed as they left.

About 6:00 o'clock A.M., one Horace Guthrie, an employee of the building, came to the rear door and knocked. That Guthrie later went around to the front door and rang the bell, but, of course, Lowe, could not answer. That later a druggist, one Emery Battle, came and opened the front door, where they found Lowe still taped to the stool. That they unbound him and later saw the safe of the Medical Arts Pharmacy which had been beaten and opened. The door leading into the office had been opened; the safe moved from the office into the portion of the drugstore near the office, where it was opened.

The police were called, and during their investigation carried Lowe to the Police Station, where he gave a full description of the men. He further stated that at the time he went to the rear door, one of the men, who he later identified as the Defendant, did not have the mask pulled over his face and that he had a thirty-second look at the Defendant before his mask was put on. The watchman picked out the Defendant from photographs shown

him at the Police Station, but was unable to identify his accomplice. Later, at two police line-ups, Jones being in one of same, the watchman identified the Defendant as one of the robbers. The watchman also identified Jones by his unusual soft voice, resembling that of Perry Como.

The Defendant, through his counsel, assigns a number of errors, some of which involve questions of fact, but the main assignment relied on by the Defendant is that the Defendant could not be guilty of the crime for which he was convicted; that is, robbery, because the property taken was not taken from the person assaulted with a deadly weapon; nor in his presence; nor was he, Lowe, the owner of the property taken, the stolen property being removed from a safe completely out of the presence of Lowe.

Robbery is defined by T.C.A. sec. 39-3901: "Robbery is the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear."

It is the insistence of Defendant that (1) he could not be convicted on this charge because the property taken was not taken from the person of the watchman, Lowe; (2) that title to the property taken was not in Lowe; (3) that he was not there and is not guilty.

Counsel for the Defendant relies heavily on the case of *Crews and Crenshaw v. State,* 43 Tenn. 350. The first two questions involved in the case at bar were considered by the Court in the above case and were decided against the State and in favor of the Defendants. The facts in the *Crews and Crenshaw v. State* case, supra, were that the Defendants were indicted for robbery. They were

tried and found guilty and sentenced to the penitentiary for a period of ten years. Motions for a new trial were filed, overruled, and the Defendants appealed to this Court.

This alleged robbery was also perpetrated during the nighttime. The home of the prosecutor was entered while he and his family were asleep. The prosecutor was confronted by the Defendants, one of whom placed a pistol to his head, and made a demand for money. The prosecutor and his sister ran from the house and fled to a neighboring house, and in their absence and before their return, one of the prosecutor's daughters was compelled to go upstairs and bring down a box belonging to her father which was broken open in the presence of the remaining members of the family and some articles of clothing were taken.

The Court was requested to charge the jury as follows:

"To constitute offense of robbery, the goods or property must be taken from the person of the party named in the indictment, as the owner, or in his presence, and against his will. And if the jury believed, from the evidence, that the property alleged to have been taken belonged to Stephen Barnly, (the prosecutor) or, Winnie Barnly, and they became frightened and ran off, nothing being taken from their persons, or in their presence—that it would not be robbery, but larceny, and they could not find the defendants guilty under the indictment."

"The Court refused to give the instructions asked for by the defendants' counsel; but charged the jury in substance as follows:

"If you believe the defendants put Stephen Barnly in fear, and caused him to run off, and then took from him his money, or hat and other goods, which was in his possession, this would be robbery. The same principle applies to Winnie Barnly's property. So, if Stephen's goods were left in possession of his wife, and the defendant put her in fear, or by violence took possession of the goods or money, left in her possession, this would be robbery."

Quoting further from the above case, the Supreme Court said:

"1st. To constitute robbery, must the taking be from the person, or in the immediate presence of the person robbed?

"2d. Can an indictment for robbery, in which the property taken is laid in the husband, be sustained by proof that the possession was in the wife, and the property taken from her, or in her presence, under fear and violence?"

By our Statute robbery is defined to be:

" 'The felonious taking, from the person of another, goods or money of any value, by violence, or putting in fear.'

"Robbery is but an aggravated larceny, and the one statutory definition is, in substance the same as at common law. The elements necessary to make out this offense in the one case, are demanded in the other. The taking must be felonious and forcible, from the person of the party robbed, either active or constructive. It is actual, when, in fact, the taking is immediately from the person; and constructive, when in the

possession of the party robbed, as if the robber having first assaulted the owner; takes away his horse standing near, or having put him in fear, drives away his cattle, or takes up his pelisse or cloak, which the owner, to save it from the robber, had thrown into the bush: 3 Greenleaf Ev., sec. 228; 4 Blackstone's Com., 241; 1 Russell on Crime, 872; *Hammon v. The State,* (manuscript)."

The Supreme Court reversed the convictions of Crews and Crenshaw on the ground that the property taken was not in the presence and view of the party robbed.

The case at bar is quite different from the Crews and Crenshaw case, supra. The prosecutor, one Barnly, and his sister fled from the presence of the would-be robbers. In the case at bar, there was no opportunity for the watchman, Lowe, to flee as he was securely taped to a stool, his hands and feet were bound, and he was unable to free himself.

The other question raised by the Defendant is the ownership of the property taken. Defendant, Lowe, did not own the property taken and counsel insists that Defendant could not be guilty of robbing Lowe, and relies on the statement of the Court in the Crews and Crenshaw case, supra, where it was held that the goods or money taken by robbery must be proved to be the property of the person named as the owner in the indictment.

This question was considered in the case of *Watson v. State,* 207 Tenn. 581, 341 S.W.2d 728, where this Court held that where the complaining witness in possession of a grocery store was robbed, the failure to prove absolutely ownership was not required where there was proof

of the possession of the store and its money by her as an agent or bailee of the owner. The Court quoted from *Jones v. State,* 166 Tenn. 102, 59 S.W.2d 501, wherein it is stated: "The exact state of the title of stolen property is of no particular concern to the thief, except that it must have been in someone else; hence evidence of possession is ordinarily sufficient proof of ownership."

It is conceded by the State that there is not a case in this State exactly in point where the alleged robbery actually occurred out of the actual presence of the person alleged to have been robbed. The State cites the case of *Barfield v. State,* 173 Texas Cr.R. 256, 129 S.W.2d 310, where a person was hired by the Houston Labor Temple as a porter and night watchman from 7:00 P.M. to 7:00 A.M. daily, and where the night watchman was confronted with armed robbers, one of which went to the locker rooms some forty feet away, and who broke in and stole $172.00, the Court in this case said: "It occurs to us that since the robber had the specific intent to obtain the property in question by the use of violence from the possession of the person robbed, whether such person was the owner thereof or not would not change the offense from robbery to theft. A person unlawfully deprived of the property which is in his care and under his control is entitled to its possession as against the robber," 129 S.W.2d 312.

Another case cited by the State is *People v. Dean* (1924), 66 Cal.App. 602, 226 P. 943, the janitor-night watchman was bound with wire while robbers blew the safe in the theater of his employer, and the Court in that case said:

"While these men did not own the money, nor even knew the amount in the safe, yet they were rightfully in possession of the theater and its contents at the time of the robbery and were entitled to this possession as against the defendant." p. 945 of 226 P.

The State cites a recent Missouri case, *State v. Gilliam*, Mo., 351 S.W.2d 723-725, where the possession of the drugstore's money was left in charge of the pharmacist, who at the time was in charge of the entire store, the Court held that the ownership in the pharmacist, from whom the money was taken by an armed robber, was sufficient to sustain the Defendant's conviction.

Counsel for the Defendant stated in his argument before the Court that the Defendant is already under two life sentences and that the outcome of this case would make no particular difference to the Defendant. However, counsel contended that he felt that the Defendant was convicted of the wrong crime and that the question should be decided by this Court and that he, as counsel for the Defendant, felt that it was his duty to prosecute this matter through the Supreme Court, even though, from a practical standpoint, the final outcome of same would be of no benefit to the Defendant.

The Defendant, who, according to the record, has had a long life in crime, testified that with his experience as a safe-cracker, he never would have opened the safe at the place of business; that the safe, which he had seen a picture of, was of light weight and he would have removed the same from the premises and opened it during his leisure time. In other words, the Defendant insisted that he wasn't there. However, this question was settled by the jury and is not strongly relied on in this Court.

The questions raised by counsel for the Defendant are novel and quite interesting. However, we think the case of *Watson v. State,* supra, decides that absolute ownership was not required to be in the watchman, Lowe, and that there is proof in the record that the prosecutor was an agent, employee and custodian of the property taken while he was on duty on the night of February 18, 1963. It, therefore, follows that this assignment of error is overruled.

We will now consider the assignment as to whether the property taken from the prosecutor, Lowe, comes within the meaning of Section 39-3901, T.C.A. which defines robbery. The Crews and Crenshaw case, supra, relied on by counsel for the Defendant, at first glance seems to be applicable to the case at bar. However, the main difference between the two cases is that in the Crews case, the persons named as the victims in the indictment fled from the scene of the would-be robbers and were not present when the property was taken. In the case at bar, the facts are quite different. The person named in the indictment could not have fled if he had so elected as he was forcibly kept within a few feet of the Defendant, and his companion, while the safe was opened and the contents were taken; he could hear the pounding and beating on the safe, and he had at least two short conversations with one of the men during the opening of the safe. In fact, it is stated in *Crews and Crenshaw v. State,* supra; "The taking must be felonious and forcible, from the person of the party robbed, either active or *constructive.* It is actual, when, in fact, the taking is immediately from the person; and constructive, *when in the possession of the party robbed."* (Emphasis ours.)

The record plainly shows that the watchman, Lowe, was in the actual presence of the Defendant when he, Lowe, answered the alarm at the rear door and was greeted by two men who thrust pistols into his stomach. From that point on, the victim was in the custody of the Defendant and his accomplice and within hearing distance of the breaking open of the safe, and certainly was in fear of his life.

We, therefore, hold that under the authority of *Crews and Crenshaw v. State,* supra, and the authorities from other states cited herein, that under the facts stated in the narrative bill of exceptions, the crime of robbery as defined under T.C.A. sec. 39-3901 was made out.

It, therefore, follows that all assignments of error are overruled, and the judgment of the Trial Court is affirmed.