# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs October 30, 2001

### STATE OF TENNESSEE v. ANTHONY NORFLEET

**Direct Appeal from the Criminal Court for Shelby County**
**No. 99-09382      Chris Craft, Judge**

---

### No. W2000-02229-CCA-R3-CD - Filed February 8, 2002

---

Defendant was convicted by a jury of aggravated robbery. Defendant appeals on three grounds: (1) that insufficient evidence exists to uphold the conviction, (2) that the trial court erred in failing to instruct the jury as to the lesser-included offense of theft, and (3) that the trial court erred in rejecting defendant's guilty plea. We conclude there was no error and affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Marvin E. Ballin, Memphis, Tennessee, for the appellant, Anthony Norfleet.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Karen Cook, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On August 12, 1999, a Shelby County grand jury indicted defendant Anthony Norfleet of aggravated robbery in violation of Tennessee Code Annotated section 39-13-402, a Class B felony. The trial court rejected defendant's offer to plead guilty and proceeded with the trial, which took place on July 11, and 12, 2000. The jury found defendant guilty of aggravated robbery. On July 31, 2000, defendant submitted a motion for new trial under Rule 33 of the Tennessee Rules of Criminal Procedure. On August 14, 2000, the trial court conducted a hearing on both the new trial motion and sentencing. The trial court denied the new trial motion and imposed a term of imprisonment of thirty years to be served in the Tennessee Department of Correction. Notice of this appeal timely followed.

On appeal, defendant challenges the sufficiency of the evidence underlying his conviction, the trial court's failure to instruct the jury regarding theft as a lesser-included offense of aggravated robbery, and the trial court's failure to accept defendant's guilty plea.

## Facts

State witness William Greene was a victim of the aggravated robbery. He testified that on September 8, 1998, he was working a 7:00 p.m. to 3:30 a.m. shift as a donut cutter at the Krispy Kreme store located on Winchester Road in Memphis. He was working with Alfonso Stribling, a co-defendant indicted in this case. The victim testified that the other employees left at 10:00 p.m., leaving only him and the co-defendant at the Krispy Kreme. At about 11:00 p.m., the victim went to take the garbage outside. He asked the co-defendant to accompany him because other employees previously saw a white Buick pull around to the rear of the store and park at the dumpster. Apparently the car drove off when the supervisor came out and told the driver to move. When the victim and the co-defendant went to take the trash outside, a man approached the victim and the co-defendant, pointed the gun at the victim's head, and instructed them to go inside. The man then told the victim to go into the store bathroom. The victim testified that he heard the co-defendant say, "[d]on't shoot me," after which time the co-defendant knocked on the door and entered into the bathroom with the victim. The two men smoked a couple of cigarettes and with the drive-through headphones in the co-defendant's possession, listened for any movement outside. After a short time, when they no longer heard anything in the store or outside, they left the bathroom and called the sheriff's department.

On cross-examination, the victim testified that he told the sheriff's department that he could not identify the person who robbed him, and the statement he gave to the sheriff gave no description of the perpetrator. However, the victim testified that he picked defendant out of a sheriff's department photo book the day after the robbery. The victim identified defendant in court as the man who accosted him on the night of the robbery. The victim further testified that he did not know how much money was stolen from the store. He stated that he merely operated the donut machine, that he had no control over the safe or any of the store's money, and that only the store's manager could exercise such control. The victim also testified that, to his knowledge, the co-defendant did not have a combination to the safe. The victim also testified that his grandson, Terrance Wilkins, who is a manager of the store, moved the money from the register to the safe before Wilkins left.

Robert Davis, the general manager for the Krispy Kreme located on Winchester, testified that the total amount of money lost as a result of the robbery was $11,012.73. He also testified that at the time of the robbery, Terrance Wilkins was an assistant manager. He further testified that it was normal procedure for the manager or assistant manager to have the combination to the safe. Davis testified that neither the co-defendant nor the victim should have had access to the safe. He lastly testified that he had no personal knowledge of how entry was gained into the safe during the course of the robbery.

After waiving his Fifth Amendment right against self-incrimination, co-defendant Alfonso Stribling testified that he and the state agreed to a plea offer for a three-year sentence on facilitation of armed robbery in return for his truthful testimony. He testified that he and co-defendant Elizabeth McClain planned the robbery and discussed robbing the store prior to September 18. They talked about "taking out the garbage or going to smoke a cigarette" in order

to let someone in the back door. He testified that McClain was not working at Krispy Kreme that evening. However, he spoke with her five or six times throughout the evening. They discussed who was working that night and the security cameras. The co-defendant stated that the lights on the security cameras flashed intermittently, which meant they were turned off. He testified that McClain told him to be looking out for something to happen that night. He said, however, that McClain did not tell him who would be coming to the store. The co-defendant also stated that he never saw defendant prior to the night of the offense.

The co-defendant testified that defendant appeared around midnight when the co-defendant and the victim went to empty the trash outside. The co-defendant testified that defendant had a handgun and pointed it at the victim before ordering them back into the store. They all walked to the front of the store and then returned to the back, at which time the victim was placed in the bathroom.

The co-defendant testified that defendant got down on his knees at the safe under the cabinet and opened the safe. Defendant took the money and then placed the co-defendant in the bathroom with the victim before leaving through the back door. The co-defendant testified that he and the victim stayed in the bathroom for about twenty minutes until they called the police.

Later that same night, the co-defendant went to McClain's house and she paid him $500.00. On cross-examination, he testified that the money was just given to him, and he did not have an agreement to be compensated for his role in the robbery. He eventually turned the money over to the police. The co-defendant testified that to his knowledge, the victim was not involved in the planning of the robbery.

When the police arrived, the co-defendant stated that defendant had a gold tooth. He observed in court at the time of trial, however, that defendant did not appear to have a gold tooth. The co-defendant was later questioned and gave a statement to police. Approximately two weeks after the incident, the co-defendant admitted to private investigators for Krispy Kreme that he was involved with McClain in a plan to rob the store. The sheriff's department again questioned him. The co-defendant testified that he called McClain with law enforcement officials recording the conversation in an attempt to get McClain to say something about the offense. Lastly, he testified that officials did not promise to make it easy on him if he cooperated. He stated, however, that officials told him they would make his cooperation known.

## Analysis

I.    *Sufficiency of the Evidence*

When a defendant challenges the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979);

State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of witnesses, the weight of their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993). A jury verdict for the state accredits the testimony of the state's witnesses and resolves all conflicts in favor of the state. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Moreover, a guilty verdict removes the presumption of innocence enjoyed by defendants at trial and replaces it with a presumption of guilt. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Thus, a defendant challenging the sufficiency of the evidence carries the burden of illustrating to this Court why the evidence is insufficient to support the verdict. State v. Freeman, 943 S.W.2d 25, 29 (Tenn. Crim. App. 1996).

In this case, defendant was convicted of aggravated robbery. Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (1991). A robbery becomes aggravated under the following circumstances:

> (a) Aggravated robbery is robbery as defined in § 39-13-401:
>> (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon;

Tenn. Code Ann. § 39-13-402(a) (1991).

When viewed in a light most favorable to the state, we conclude the evidence is sufficient to sustain the conviction for aggravated robbery. The evidence adduced at trial revealed that both the victim and the co-defendant identified defendant at trial. The record also reveals that the victim identified defendant the day after the robbery upon viewing the sheriff's photo book. Likewise, the co-defendant identified defendant as the one who opened the safe and removed its contents. We conclude defendant's identity was sufficiently established at trial.

The fact that defendant acted with a deadly weapon was also established at trial. The evidence revealed that defendant pointed a gun at the victim and instructed the victim to stay in the bathroom. Defendant did so with the intent of robbing the Krispy Kreme store.

In his brief, defendant asserts that the stolen property - the money - was not taken from the person of the victim. We disagree. The indictment in the instant case reads that defendant took goods valued at over $1,000 from the victim. Defendant asserts that, "[the victim] may have been in fear, but he lacked control over the money and nothing was taken 'from his person.'" However, we believe that the state is correct in its assertion that "if an offender, with the intent to deprive the owner, asserts control over property by means of the owner or possessor being removed from the presence of the property by force or fear, the offense of robbery is committed to the same degree that it is if the offender carries the property away from the victim's presence." See State v. Nix, 922 S.W.2d 894, 900 (Tenn. Crim. App. 1995). Additionally, in Jones v. State, 214 Tenn. 683, 383 S.W.2d 20 (Tenn. 1964), the Tennessee Supreme Court affirmed a robbery conviction where a night watchman was taped to a stool

while the defendant and an accomplice robbed a safe in another part of the building. The court stated that from the moment the defendant and his accomplice entered the building and took control over the victim by use of a pistol, "the victim was in the custody of the defendant." Jones, 214 Tenn. at 693. The court sustained the robbery conviction. Id. "The theft of property located in essentially the same building as the victim is located, is sufficient to be 'from the person' of the victim." State v. Palmer, No. W1999-01310-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 130, at *18 (Tenn. Crim. App. at Jackson, February 7, 2001) (citing Jones, supra); Morgan v. State, 220 Tenn. 247, 415 S.W.2d 879 (1967); State v. Edwards, 868 S.W.2d 682, 699-700 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1993)).

Because the evidence shows that defendant's identity was established, that he indeed opened the safe and removed the money from therein, and that defendant acted with a deadly weapon, we conclude that sufficient evidence existed to find defendant guilty of aggravated robbery. We affirm the judgment of the trial court.


*II.*     *Whether Trial Court Erred in Failing to Instruct the Jury Regarding Theft as a Lesser-Included Offense of Aggravated Robbery.*

Defendant's next issue on appeal suggests that the trial court erred by not instructing the jury on the charge of theft as a lesser-included offense of aggravated robbery. We disagree with defendant and affirm the trial court's ruling.

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (1991). A robbery becomes aggravated under the following circumstances:
> (a) Aggravated robbery is robbery as defined in § 39-13-401:
>> (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]

Tenn. Code Ann. § 39-13-402(a) (1991). Our standard of review in deciding whether the trial court erred in ascertaining which lesser-included offenses should be submitted to the jury is *de novo* with no presumption of correctness. State v. Bowles, 52 S.W.3d 69, 74 (Tenn. 2001) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)).

In Burns, our supreme court stated that an offense is a lesser-included offense if:
> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing (1) a different mental state indicating a lesser kind of culpability; and/or (2) a less serious harm or risk of harm to the same person, property or public interest; or
> (c) it consists of [facilitation, attempt, or solicitation] of the offense charged or of an offense that otherwise meets the

definition of lesser-included offense in part (a) or (b) . . . .
Burns, 6 S.W.3d at 466-67; see Bowles, 52 S.W.3d at 75.

When determining whether evidence is sufficient to justify a jury instruction on a lesser-included offense, the Burns court stated:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Burns, 6 S.W.3d at 469.

There is no question that theft is a lesser-included offense of aggravated robbery. State v. Lewis, 36 S.W.3d 88, 99-100 (Tenn. Crim. App. 2000); State v. Hayes, 7 S.W.3d 52, 56 (Tenn. Crim. App. 1999). Therefore, we make inquiry as to whether "any evidence exists that reasonable minds could accept as to the lesser-included offense." Burns, 6 S.W.3d at 469. We conclude that no evidence was presented to support an inference of theft.

In State v. Stephenson, the Tennessee Supreme Court stated that "[w]here the evidence in a record clearly shows that the defendant was guilty of the greater offense and is devoid of any evidence permitting an inference of guilt of the lesser offense, the trial court's failure to charge on a lesser offense is not error." 878 S.W.2d 530, 550 (Tenn. 1994); see State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999). A panel of this Court recently held that "the trial court is not obliged to give the lesser-included offense instruction where there is no evidence of the lesser included offense *other than* the very same evidence which supports the greater offense, that is 'that reasonable minds could accept as to the lesser-included offense.'" State v. Lewis, 36 S.W. 3d 88, 100 (Tenn. Crim. App. 2000) (emphasis in original); see State v. Jackson, No. W2000-02589-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 966, at *3 (Tenn. Crim. App. at Jackson, December 18, 2001).

In the instant case, the victim, William Green, testified that defendant pointed a gun at the victim's head and instructed him to stay in the bathroom of the Krispy Kreme while defendant took money from the safe. Further, co-defendant Alfonso Stribling testified that defendant pointed a gun at the victim and instructed the victim to stay in the bathroom while defendant robbed the store. No other proof was offered regarding whether defendant did or did not use a gun. The trial court stated that even though theft is a lesser-included offense of aggravated robbery, in this case it is "either an aggravated robbery or it is a question of identification." Either defendant committed a theft – and if he did, the evidence showed that it was with a deadly weapon, thus making it an aggravated robbery – or defendant was not the one committing the crime.

The evidence shows that defendant was identified by two witnesses who stated that

defendant used a gun in the perpetration of the robbery. Because no evidence was presented at trial that reasonable minds could accept as to the lesser-included offense of theft, the second prong of the <u>Burns</u> test, which concerns the sufficiency supporting a conviction for a lesser-included offense, <u>Burns</u>, 6 S.W.3d at 469, need not be addressed by this Court. Accordingly, we conclude that the trial court's failure to instruct the jury on the offense of theft was not error. We affirm.

### III.    Trial Court's Rejection of Defendant's Guilty Plea

Defendant next contends that the trial court erred by not accepting defendant's guilty plea. We affirm the trial court's decision.

When a defendant chooses to plead guilty, the plea must be "voluntarily, understandingly, and knowingly entered to pass constitutional muster." <u>Hicks v. State</u>, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998) (citing <u>Boykin v. Alabama</u>, 395 U.S. 238, 244, 89 S. Ct. 1709, 1713, 23 L. Ed. 2d 274 (1969)). Additionally, in Tennessee, the Tennessee Rules of Criminal Procedure govern the trial court's acceptance of a guilty plea. It states as follows:

> (f) Determining Accuracy of Plea.   Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that *there is a factual basis for the plea*.

Tenn. R. Crim. P. 11(f) (emphasis added).   Additionally, "[a] guilty plea is an admission of all facts alleged." <u>State v. Brooks</u>, No. 02C01-9804-CC-00116, 1998 WL 775649, *3 (Tenn. Crim. App., filed November 6, 199, at Jackson); <u>see</u> <u>State v. Wilkes</u>, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984) (citing <u>Parker v. State</u>, 492 S.W.2d 456 (Tenn. Crim. App. 1973)). Therefore, we first note that any plea must not only be made knowingly, understandingly, and voluntarily, but there must also be an adequate factual basis upon which it rests.

However, we also note that there is no absolute right to have a plea agreement accepted by the trial court. <u>State v. Burris</u>, 40 S.W.3d 520, 523 (Tenn. Crim. App. 2000) (citing <u>State v. Turner</u>, 713 S.W.2d 327, 329 (Tenn. Crim. App. 1986) (citations omitted)). In <u>Burris</u>, this Court further stated, "the ultimate decision whether to accept or reject a particular plea bargain agreement rests entirely with the trial court." <u>Id.</u>

"When a defendant challenges the court's failure to accept a plea, our obligation as an appellate court is to determine if an abuse of discretion occurred." <u>VanArsdall v. State</u>, 919 S.W.2d 626, 630 (Tenn. Crim. App. 1995) (citing <u>State v. Williams</u>, 851 S.W.2d 828, 830 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1992). If no substantial evidence supports the trial judge's decision, an abuse will be found. <u>Id.</u>

In <u>State v. Lord</u>, 894 S.W.2d 312 (Tenn. Crim. App. 1994), this Court stated that, "the requirement that the record show a factual basis for the plea primarily exists to insure that the defendant's guilty plea is made with his understanding that his admitted conduct actually constitutes the offense with which he is charged . . . ." <u>Lord</u>, 894 S.W.2d at 316 (citing

<u>McCarthy v. United States</u>, 394 U.S. 459, 466-67, 89 S. Ct. 1166, 1171, 22 L. Ed. 2d 418 (1969)).

In the instant case, the record reflects that the trial court rejected the plea for two reasons. First, the trial court found defendant to not be credible due to discrepancies in his testimony at an earlier hearing and the final plea hearing. Second, the trial court refused to accept the plea to aggravated robbery because defendant would not admit to the facts the state sought to have stipulated as the basis for the plea. Defendant's plea did not encompass the elements of the offense of aggravated robbery. In fact, upon questioning by the trial court, defendant specifically denied committing an aggravated robbery when he stated that he acted without the use of a weapon, an essential element to the crime of aggravated robbery. The trial court stated that it would not allow defendant to plead to an offense that defendantC would be innocent of if defendant's version of the facts was true.

We conclude that throughout all of the pre-trial hearings the trial court made a good record of his reasoning for denying the guilty plea. As such, we conclude that the record does not contain evidence of a sufficient "factual basis" for the plea. Therefore, we conclude there was no abuse of discretion. As such, we affirm the judgment of the trial court.

Lastly, defendant alleges that the trial court's denial of his guilty plea constitutes a deprivation of due process. Defendant cites no authority for this, nor can this Court cite to any. Further, we believe the foregoing analysis of defendant's claim regarding his guilty plea is sufficient to dispose of the issue. We affirm the trial court's ruling.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE