IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 25, 2019 Session

## WILLIAM BOATWRIGHT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 102783      G. Scott Green, Judge**

_____

### No. E2018-02185-CCA-R3-PC

_____

The Petitioner, William Boatwright, appeals from the Knox County Criminal Court's denial of his petition for post-conviction relief from his especially aggravated robbery, aggravated robbery, aggravated burglary, and two aggravated assault convictions, for which he is serving a forty-seven-year sentence. The Petitioner contends that he received the ineffective assistance of counsel. We conclude that the Petitioner received the ineffective assistance of counsel, reverse the judgment of the post-conviction court, and remand this case for a limited motion for a new trial regarding the sufficiency of the evidence issues addressed in the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. THOMAS T. WOODALL, J., filed an opinion concurring in part and dissenting in part.

Joshua Hedrick, Knoxville, Tennessee, for the appellant, William Boatwright.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Charme P. Allen, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case initially arose from the Petitioner's participation in a home invasion of an apartment in which multiple people were present. *See State v. William Ray Boatwright*, No. E2012-00688-CCA-R3-CD, 2013 WL 775787 (Tenn. Crim. App. Feb. 28, 2013), *perm. app. denied* (Tenn. June 12, 2013). The trial court merged the aggravated assault convictions with the especially aggravated robbery conviction and

sentenced the Petitioner to forty-nine years in incarceration. In the appeal from the conviction proceedings, this court summarized the facts as follows:

> This case arises out of a home invasion/robbery that occurred very early on the morning of May 22, 2008, at the Knoxville apartment of Christy Hines. Hines was at home with her mother, Jamesina Thompson; her friend, Alora Williams; her cousin, Stephon Matthews; and her two young children when someone knocked on the door. Matthews cracked the door open and a group of armed, masked men rushed in, terrorizing the occupants, robbing Matthews of his cash, and taking a carton of cigarettes and a camcorder from the apartment. Just before leaving, one of the men, whom Williams later identified as the defendant, delivered a violent blow with his gun to Matthews' head, fracturing his skull. The Knox County Grand Jury subsequently returned a five-count indictment charging the defendant with especially aggravated robbery, aggravated robbery, especially aggravated burglary, and two counts of aggravated assault.

> At the defendant's trial, Stephon Matthews testified that in May of 2008, he was seventeen years old, a high school football player, and living with his cousin, Christy Hines, in her Knoxville apartment. On the night of the burglary, he and his family were at home when someone knocked on the door. They asked who it was, and a person answered "Mike." He opened the door and four men rushed in, knocking him to the floor as they "slung the door open." He heard someone say, "[C]'mon Strong," and the men twice searched his pockets for his money as he lay on the floor. They were unable to get it, so he took $200 out of his pocket and threw it on the table for the men to take, saying, "[H]ere." Before the intruders left, one of the men who was standing over him said, "I'm sorry I've got to do this to you, Cuz," and then hit him in the head with a gun. Matthews testified that his skull was fractured, which required him to undergo emergency surgery and spend a week in the hospital. He said that his memory was impaired by his head injury and that he was no longer able to play football.

> On cross-examination, Matthews acknowledged that his testimony at the preliminary hearing was that the man who struck him was wearing a blue bandana.

> Jamesina Thompson testified that on May 21, 2008, she and her daughter, Christy Hines, spent the afternoon sitting outside with her daughter's two children and a "bunch of little kids" from the community holding a dance contest for the children, which her daughter recorded on her camcorder. During that time, the defendant arrived with three other

men, said hello to them, and then went up the steps to the neighbors that he was visiting.

Later that night, her daughter's friend, Alora Williams, came over to visit and Matthews, who had been out, returned home. Thompson testified that Hines was "getting her hair done" and the rest of them were watching television when someone knocked at the door. She twice asked who it was, and each time the person replied, "Mike." She explained that she asked twice because the next-door neighbor was named Mike, but he was Caucasian and she knew that it was not his voice at the door. Suspicious, she peeked out the window and saw that the person was not standing in front of the door where she could see him but instead beside the door wearing a hood. In the meantime, Matthews had gotten up to answer the door. She and her daughter both called out a warning to him, but he moved fast and they were too late to prevent him from opening the door, with his foot behind it so that he could peek out. As soon as he did so, there was a "big kaboom" as the door was burst all the way open.

Thompson testified that she got behind a large speaker in the living room and remained there without moving the entire time that the intruders were in the home. She heard someone say, "[Y]ou already know what time it is," followed by "[I]s there anybody else in here? If there's anybody else in here, come out now or I'll shoot everybody in here." At that point, Williams, who had fled from the room when the door burst open, came from around the corner and stood against the living room wall. After that, Thompson heard people rummaging back and forth throughout the home, one of the intruders call her granddaughter by name as he asked her if anyone else was in the apartment; someone asking her granddaughter why the light was so dim and telling her not to cry; Matthews['] volunteering to give up his money and one of the intruders saying, "[T]hat's good"; one of the intruder[']s instructing another one to get a box of Newport cigarettes; the sound of feet moving away; a period of silence; one of the intruder[']s saying, "[S]orry I got to do this to you, Cuz"; and then the sound of Matthews['] groaning.

Thompson testified that after the intruders left, Williams ran to shut the front door and she went to assist Matthews, who had "staggered up from the floor" and was lying slumped on the couch with blood running down his face. About eight or nine minutes later, Matthews' voice became garbled and he appeared to be having a seizure, so they called an ambulance, which transported him to the hospital for emergency surgery. Thompson testified that, in addition to Matthews' cash and the carton of cigarettes, the intruders took the camcorder that her daughter had been

-3-

using earlier that afternoon. She said that the next day they found the camcorder, which had been broken "to shreds," behind a neighbor's house.

Thompson testified that she informed the police officers who investigated the crimes that one of the [intruders'] voices sounded very familiar to her. After the police left, she found two slugs on the carpet, which she turned over to the police. Thompson said that she heard a clicking sound at the time one of the intruders threatened to shoot everyone in the apartment, and she therefore assumed that the slugs fell from his gun at that time.

Christy Hines testified that at the time of the burglary she made money by selling crack cocaine from her Knoxville apartment. She said that on the afternoon of May 21, 2008, she was sitting outside in the parking lot with her mother and her children "making her sales" and videotaping the children when the defendant arrived with James Cade and two other men. She stated that the defendant and Cade remained at the complex for a couple of hours and saw her making drug sales during that time.

Hines testified that she, her family, and her friend, Alora Williams, were inside her apartment later that night when a man wearing a hood knocked at the door and identified himself as "Mike." She said she was standing right behind her cousin when he cracked the door open, and she saw James Cade pulling a blue bandana over his face just before he and the other men rushed into the apartment. She stated that she got down on the floor between the wall and the couch, where she heard the intruders say a number of things, including: "[Y]'all mother fuckers know what it is"; "[W]here the shit at"; "[C]'mon, Strong"; and "[B]itch, get out [of] the kitchen and come back in there or I'm shooting everybody in the house." She also heard one of the men direct another to get the carton of Newports, and one of them say, just before leaving, "I hate to do you like this, Cuz," which was followed by a sound like an egg splattering and Matthews moaning.

Hines testified that the men took Matthews' cash, her camcorder, and the carton of cigarettes. She described finding the two bullets in the living room after the police left her apartment and her discovery of the smashed camcorder behind the neighboring building the next day. She said that she described Cade to the police and later picked his photograph out of a photographic lineup. She also testified that she told the police she recognized the defendant's voice and that she gave them his name.

-4-

Alora Williams testified that she fled to the kitchen when the door of the apartment was burst open, but "the next thing [she] kn[e]w, a big gun was in [her] face" and one of the intruders threatened to shoot everyone in the apartment if she did not come out. She, therefore, put her hands in the air and returned to the living room, where she slumped against a wall and watched everything that transpired. She said that two men ran to the back of the apartment while two remained in the front. One of those two was wearing a blue bandana and the other one was wearing a stocking cap pulled down over his eyes. While the men in the back of the apartment were making noises that sounded as if they were tearing the rooms apart, the man in the stocking cap asked her questions about herself such as her name and where she was from, which she found odd. After the two men in the back ran to the front of the apartment and the men were heading out the door, the man who had been talking to her turned back and said, "I hate to do this to you, Cuz," before striking Matthews on the head with his gun.

Williams made a positive courtroom identification of the defendant as the man who struck Matthews in the head and said that Matthews had already given his money to the defendant before the defendant struck him. She said that she could see "straight through" the defendant's stocking cap and that she also recognized him by his voice. Williams explained that she had met the defendant before the burglary at a local mall, where he had engaged her in a couple of brief conversations and asked for her telephone number. They never went out on a date, however.

On cross-examination, Williams reiterated that she was able to see through the defendant's stocking cap, which, she said, was made of "see-through mesh." She testified that the defendant was the only one who talked and that her attention was concentrated on his mouth and his distinctive teeth, which consisted of front teeth that "stuck out" and bottom teeth that were discolored, rotting, and "kind of wrangled." On redirect examination, she testified that she identified the defendant from a photographic lineup about a week after the burglary and at a preliminary hearing held several weeks after the burglary.

James Cade testified that he was with the defendant in the parking lot of Hines's apartment complex for about thirty minutes early in the evening of May 21, 2008, before leaving by himself. Later that day, the defendant called to ask where he could get some drugs, and he gave him Hines's name. He and the defendant returned to the complex, met Hines as she was coming out of her apartment, and asked her about her drugs. She informed them that she did not have any at that time, so they left the

complex again and he dropped the defendant off before going home and then to bed.

At about 1:30 or 2:00 a.m. the next morning, the defendant called to ask for a ride. Cade testified that he picked up the defendant and two men who were with the defendant and took them to Hines's apartment. All four of them walked up to Hines's porch, and the defendant knocked on the door and announced that he was "Mike." When the door opened "a little bit," the defendant took out a gun and he and his two friends "bum-rushed in." Cade said that he initially "froze up," but then returned to his car and went home and back to bed. The next morning, the defendant called to ask why he had deserted them and he explained to the defendant that he "didn't know it was going to go down like that." The defendant then told him that he had to hit Matthews in the head with his pistol "so he couldn't remember nothing" because Matthews had gotten too close to him when he was taking his money.

Cade, who said he had no criminal record before his charges in the instant case, testified that he had pled guilty to facilitation of especially aggravated robbery for his role in the crimes. On cross-examination, he acknowledged that he was originally charged with not only especially aggravated robbery, but also aggravated robbery and especially aggravated burglary. He further acknowledged that he had agreed to testify against the defendant in exchange for being allowed to plead guilty to the lesser-included offense of facilitation of especially aggravated robbery and the dismissal of the other charges against him.

Investigator Tiffany Copley of the Knoxville Police Department's Forensic Unit identified the bullets collected from the crime scene as well as various photographs of the apartment and Matthews' head injury and testified that she was unable to obtain any usable fingerprints from the apartment.

Matthews' medical records, which included a discharge summary noting that he had surgery for a skull fracture, were admitted as an exhibit by stipulation of the parties and published to the jury.

Investigator Charles Lee of the Knoxville Police Department's Major Crimes Unit testified that he showed Williams a photographic lineup on May 30, 2008, from which she positively identified the defendant. On that same day, he showed Hines a separate photographic lineup from which she made a positive identification of James Cade.

Following the trial court's denial of the defendant's motion for judgment of acquittal, Ebony Wright testified on the defendant's behalf that the defendant was with her at a nightclub from approximately 11:30 to 11:45 p.m. on May 21, 2008, until 3:45 a.m. the next day. On cross-examination, Wright testified that her earlier preliminary hearing testimony in which she said that she and the defendant were together on the night of May 22, 2008, was a "miscommunication." She acknowledged having testified at that hearing that she had been watching the Cavaliers play the Lakers on the night the defendant came to visit her. When informed that the game did not occur on that night, she testified that "it might've been a different team." Finally, she acknowledged that she had been convicted of shoplifting in June 2000.

The defendant elected not to testify and rested his case without presenting any additional evidence. Following deliberations, the jury convicted him of the indicted charges.

*Id*. at *1-5. On appeal, this court modified the Petitioner's conviction for especially aggravated burglary to aggravated burglary and modified his effective sentence to forty-seven years' incarceration. The judgments of the trial court were affirmed in all other respects.

The Petitioner sought post-conviction relief, alleging multiple instances of ineffective assistance of trial counsel, and the post-conviction court denied relief. On appeal, this court summarized the facts as follows:

. . . [T]rial counsel testified that he had practiced law since 2003. Counsel stated that he could not recall whether he spoke with the Petitioner's previous attorney about the case, that he was unaware previous counsel had hired an investigator, and that he did not discuss the Petitioner's case with previous counsel's investigator. Counsel said that he did not review witness statements or recordings prepared by previous counsel's investigator and that he was unaware Ms. Williams "recanted her identification" of the Petitioner to the investigator before the trial.

Trial counsel testified that he investigated the case and that his fee for investigating may have been included with the "prepare for trial" or "discovery" fee claim entries. Counsel stated that he reviewed the evidence, that he and the Petitioner, along with the Petitioner's girlfriend, discussed the case, and that he spoke with the State during his investigation. Counsel said that he did not interview the victims but that the victims' testimony was "consistent with what [the Petitioner] said they were going to testify to, [and] with what the State said they were going to testify to."

-7-

Counsel stated that codefendant Cade was an accomplice, that the trial transcript did not reflect that counsel requested an accomplice jury instruction, and that he did not know if the issue was raised in a motion for a new trial. Counsel stated that he raised the lack of an instruction on appeal but agreed that if an issue were not raised in a motion for a new trial, it was generally waived.

Trial counsel testified that the "heart of the case" was the especially aggravated robbery charge and that he was aware the robbery statute stated the taking must be concurrent with or preceded by force. When asked whether he was "familiar with cases such as *Owens* and *Swift* about a taking followed later in time by an assault and how it's distinguished from a robbery," counsel said that he had not been presented with that issue and was unaware of the issue at the time of the Petitioner's trial. The following exchange occurred between the post-conviction court, post-conviction counsel, and the State:

> THE COURT: Was sufficiency of the evidence an issue litigated on appeal?
>
> THE STATE: The [court of criminal appeals] found, your Honor, please, that there was sufficient evidence to support the convictions and just – I think the only thing that changed was that I convicted him of especially aggravated burglary and especially aggravated robbery, and so the [court of criminal appeals] decided that that was duplicative and so they reduced the especially aggravated burglary to aggravated burglary and adjusted his sentence.
>
> . . .
>
> [POST-CONVICTION COUNSEL]: Sufficiency was litigated. This – the exact issue of the timing of the force was not.
>
> THE COURT: But how would sufficiency of the evidence not subsume that issue?
>
> [POST-CONVICTION COUNSEL]: . . . [I]f no party pressed it to the [c]ourt, the court of appeals cannot be expected to reach into that issue without having been asked and find essentially that nobody's complained about the timing of the

-8-

force, but we've decided that we're going to deal with the timing of the force.

. . .

THE COURT: Well, go ahead.  Go ahead.

Trial counsel stated that he did not argue that the serious bodily injury occurred after the taking and that he could not remember if he argued the Petitioner committed an aggravated robbery rather than especially aggravated robbery during his closing argument.

Trial counsel testified that the Petitioner received a twelve-year sentence on the aggravated robbery of Ms. Williams.  Counsel was shown a transcript of Ms. Williams's testimony and was asked what property was taken from Ms. Williams.  The following exchange occurred:

[THE STATE]: Your Honor, let me just object at this point –

THE COURT: Why should I not sustain that, [Post-Conviction Counsel], if the court of criminal appeals has ruled on the sufficiency of the evidence within this record to sustain these convictions, has this not been previously determined?  Where are we going?

. . .

[POST-CONVICTION COUNSEL]:  Your Honor, the issue before the Court is, in this case, whether or not it was argued to the trial court level and argued on appeal whether that issue was raised.  Now, I recognize that the court of criminal appeals was asked as a general proposition to review the sufficiency of the evidence, but as this [c]ourt is aware our position is that a court, a trial court, or an appellate court, should not be expected to on its own parse through the issues when the issues are not pressed by the litigants.

. . .

THE COURT: All right.  Well, I'll give you a little latitude.  I know what the issue is here and you know where I stand on –

[POST-CONVICTION COUNSEL]: I do.

-9-

THE COURT: – the sufficiency of the evidence.

Trial counsel testified that the fee claim reflected he spent one and one half hours with the Petitioner before the trial. Counsel stated that he spoke with the Petitioner about testifying and the Petitioner's criminal record and that "whether it was a [thirty] second discussion or a [thirty] minute discussion, [the Petitioner] knew he could not testify." Counsel stated that whether to testify was the Petitioner's decision "but with his record, it would've been devastating to any sort of defense."

Trial counsel testified that this case was all about "identification" and that Ms. Williams was the only witness who could "sort of identify" the Petitioner. Counsel agreed that the identification of the Petitioner "basically turned on Ms. Williams's somewhat identification and the testimony of [codefendant] Cade" and that Ms. Williams had selected the Petitioner from a photograph lineup a few weeks after the incident.

On cross-examination, trial counsel testified that he did not represent the Petitioner at the preliminary hearing, that he received a transcript of the preliminary hearing, and that Ebony Wright testified as a defense witness at the hearing and at the trial. Counsel stated that previous counsel withdrew because the Petitioner was uncooperative.

Trial counsel testified that he learned codefendant Cade was going to testify days before the trial, that he cross-examined codefendant Cade about his hope to receive a lesser sentence in exchange for his testimony, and that codefendant Cade's testimony was corroborated by other evidence. Counsel said Ms. Williams identified the Petitioner on the night of the robbery in a photograph lineup and at the preliminary hearing. Counsel stated that Ms. Williams said she first met the Petitioner at a shopping mall and that she recognized the Petitioner's teeth and voice during the robbery. Counsel said that Ms. Hines and Ms. Thompson testified that they saw the Petitioner and codefendant Cade in their neighborhood on the day of the robbery and that Ms. Hines said she recognized the Petitioner's voice. Counsel stated that Ms. Williams and Mr. Matthews were inside the apartment when the robbery occurred and that Ms. Williams did not suffer serious bodily injury.

Trial counsel testified that the State filed a notice of intent to seek enhanced punishment based on the Petitioner's criminal record, which included crimes of violence and dishonesty, including theft. Counsel stated that he agreed with the Petitioner's decision not to testify and that the Petitioner would have had "major credibility issues" if he had testified.

-10-

Trial counsel testified that his primary focus was to challenge the Petitioner's identity and codefendant Cade's testimony. Counsel said that he called Ms. Wright as an alibi witness but that her testimony did not provide a "complete alibi." Counsel stated that it was possible his fee claim did not include all of his work in the case. Counsel said that he filed a timely motion for a new trial and a notice of appeal. On redirect examination, counsel testified that he did not challenge the admissibility of the Petitioner's previous convictions before the trial.

Private Investigator Thomas Ham testified that previous counsel hired him to investigate the Petitioner's case and that he interviewed Ms. Williams by telephone. A transcript of the interview was introduced as an exhibit and reflected that Ms. Williams told Mr. Ham that the incident was "so long ago [she didn't] remember anything" and that she could not recognize the Petitioner's voice. Mr. Ham stated that he met with previous counsel and the Petitioner on one occasion and that he created a memorandum of the meeting. Mr. Ham said trial counsel never contacted him, asked for his records, or requested that he continue investigating. On cross-examination, Mr. Ham testified that he was unaware Ms. Williams identified the Petitioner from a photograph lineup.

*William Boatwright v. State*, No. E2017-00211-CCA-R3-PC, 2018 WL 2324369, at *1-6 (Tenn. Crim. App. May 22, 2018).

On appeal, this court remanded the case to the post-conviction court for findings of fact and conclusions of law related to the Petitioner's allegations that trial counsel provided ineffective assistance by failing to challenge the sufficiency of the especially aggravated robbery conviction on the basis that Mr. Matthews did not suffer serious bodily injury until after the taking had occurred and by failing to assert that the aggravated robbery conviction relative to Ms. Williams should have been dismissed because Ms. Williams did not possess the property when it was stolen. The present appeal is limited to these allegations of ineffective assistance of trial counsel.

On September 27, 2018, the post-conviction court determined, without receiving additional evidence, that the injury inflicted upon the Mr. Matthews occurred "during with and concurrent with the taking of the property." Relative to whether Ms. Williams possessed the property taken during the incident, the court determined that the trial court, as the thirteenth juror, concluded the evidence was sufficient to support the Petitioner's conviction for the aggravated robbery of Ms. Williams, relying in part upon the pattern jury instruction definition of "owner." As a result, the court determined that the Petitioner failed to establish he received the ineffective assistance of counsel.

-11-

Although the post-conviction court requested that post-conviction counsel prepare a proposed order based upon the court's determinations, an order was not entered, and on November 9, 2018, trial counsel was recalled for further testimony.

Trial counsel testified that Mr. Matthews, the victim of the especially aggravated robbery conviction, gave the Petitioner, who held a pistol, and the codefendants approximately $200. Counsel agreed that Mr. Matthews was struck in the head with the pistol, which counsel referred to as "pistol whipped," as the Petitioner and the other perpetrators "were on their way out" of the apartment. Counsel said that he would not dispute the trial evidence if it showed that Mr. Matthews was assaulted after "they had the money." Counsel said that the basis for the serious bodily injury was Mr. Matthew's skull fracture.

Trial counsel testified, when asked if he were aware of our supreme court's *Owens* and *Swift* opinions, that he was aware of the case, which he did not identify by name, that predated the Petitioner's trial but that the other case was "an unpublished opinion that may have not quite been run through yet or just been decided" by this court. Counsel agreed that he previously testified that he was not aware of any issue related to the timing of the taking and the infliction of serious bodily injury upon Mr. Matthews. Counsel said that the chosen defense was identity and that to argue an especially aggravated robbery did not occur because of the timing of the force used to inflict serious bodily injury would have been disingenuous to the jury. Counsel agreed he neither raised the issue in the motion for a new trial nor on appeal. Counsel disagreed that if a court determined that the taking preceded the force, an especially aggravated robbery could not have occurred.

Trial counsel testified that the offense had not been completed before the injury was inflicted upon Mr. Matthews because the incident occurred inside an apartment, rather than on the street. When asked if he considered whether the facts supported an especially aggravated robbery conviction, counsel stated,

> A lot of things were considered. The identification of [the Petitioner] was the basis [of] our defense. That's the route we both chose to go down. He had his alibi witness. He's not there, so we did not go down other routes that would've been a little difficult to sustain to a judge or a jury.

Counsel said, though, that he did not know if he considered but chose not to raise the issue. Counsel agreed that his testimony was that he was unaware of this issue at the time of the trial and that he neither raised the issue in the motion for a judgment of acquittal nor on appeal. Counsel explained,

> The crime would have not been completed in order to have been able to make that argument. I need to have factual basis for me to make an argument to this Court, to that Court, to an Appellate Court, I'm not going

to make an argument that I don't believe is a credible argument based in fact and in law when you combine the facts to the law, so that decision was made.

Counsel said this decision was made when he filed the appeal. When asked when counsel became aware of the issue before seeking appellate relief, he stated, "I don't know. I don't know whenever. I don't know." He said that he analyzed this issue "after the hearings we've had and the appeal briefs that [post-conviction counsel] filed and I looked at, I had to apply those to figure out what [post-conviction counsel] was after." Counsel did not think he was "wrong in what [he] did back then." Counsel stated that the sufficiency of the especially aggravated robbery conviction "just wasn't anything that we were focused on until it came up afterwards."

Trial counsel testified that $200 was taken from Mr. Matthews and that a camcorder, cigarettes, and a PlayStation console were taken from the apartment. Counsel did not dispute that Ms. Williams did not live in the apartment. Counsel disagreed with the assertion that if Ms. Williams did not own any of the property taken during the incident and did not have possession of the property, she could not have been a robbery victim. Counsel stated that he assumed everyone inside the apartment owned "everything in the apartment, if I don't know who owns specific things." Counsel agreed the jury was able to assume that everyone inside the apartment owned everything inside the apartment. He did not recall whether he questioned Ms. Williams about whether she owned any of the property taken during the incident. Counsel said that he neither raised this issue in the motion for a judgment of acquittal, the motion for a new trial, nor on appeal. Counsel said he did not know why he did not raise the issue.

The post-conviction court concluded from the bench that trial counsel exercised "sound trial strategy not to be questioning and raising these issues in the presence of the jury when the whole defense is identification." The court determined that counsel did not provide ineffective assistance "in his representation for how he tried the case in the presence of the jury, i.e., the questions and the focus being is this the guy who did it?" The court found that the issue was whether counsel should have raised the issues to the trial court in the motion for a judgment of acquittal and on appeal.

Trial counsel testified further that the evidence showed Ms. Williams was not in actual possession of the items taken during the incident but that Ms. Williams was in constructive possession because she was inside the apartment. Counsel agreed that if Ms. Williams had not been in constructive possession, the charge regarding Ms. Williams would have been dismissed as a matter of law, which would have decreased the Petitioner's sentence by twelve years.

-13-

On cross-examination, trial counsel testified that three people were involved in the home invasion and that two people were prosecuted. Counsel agreed the victims testified that all three perpetrators possessed firearms and ransacked the apartment. Counsel stated that Mr. Matthews was struck in the head as the perpetrators were "on the way to the door." Counsel agreed Mr. Matthews was a large person who could have "protected the women or tried to stop" the perpetrators.

The post-conviction court entered a written order denying relief. Relative to whether trial counsel provided ineffective assistance by failing to "argue/litigate the sufficiency question(s) to the jury," the court determined that counsel made reasonable tactical decisions not to "argue whether the State proved the elements of each indicted offense," based upon the chosen defense of mistaken identity. The court stated, "If one's client was not present and took no part in the crime or crimes, it matters not what occurred at the scene of the crime."

Relative to whether trial counsel provided ineffective assistance by failing to "raise/argue the sufficiency question to the trial court" in a motion for a judgment of acquittal and on appeal, the post-conviction court determined that the Petitioner's reliance on *State v. Owens*, 20, S.W.3d 634, 637 (Tenn. 2000), and *State v. Swift*, 308 S.W.3d 827, 829 (Tenn. 2010), was misplaced and "easily distinguishable from the facts of this case." The court, relying on *State v. Henderson*, 531 S.W.3d 687 (Tenn. 2017), determined that it was reasonable to infer from the evidence that the Petitioner and the other perpetrators each had "a continuous larcenous intent" at the time Mr. Matthews was struck. The court determined that *Swift* and *Owens* would have been controlling authority at the time of the Petitioner's trial and that trial counsel could not be faulted for not having the benefit of *Henderson*. The court concluded that counsel had not provided ineffective assistance.

Relative to whether trial counsel provided ineffective assistance by failing to allege in a motion for a judgment of acquittal and on appeal that insufficient evidence supported the aggravated robbery of Ms. Williams, the post-conviction court determined that Ms. Williams was present inside the apartment when multiple armed perpetrators entered the apartment and took multiple items at gunpoint. The court found that the evidence supported the conviction. The court concluded that counsel had not provided ineffective assistance. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn.

-14-

1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## I.     Especially Aggravated Robbery

The Petitioner contends that trial counsel provided ineffective assistance by failing to challenge the especially aggravated robbery conviction on the basis that the force used to inflict serious bodily injury upon Mr. Matthews did not occur until after the theft had been completed. The State responds that counsel was not ineffective in this regard because "the law regarding the timing of the serious bodily injury" was not resolved until after the Petitioner's trial.

As this court stated in its previous opinion in this post-conviction matter, "[t]he issue of whether the evidence is sufficient to establish a defendant's identity as the perpetrator is distinct from whether trial counsel provided deficient performance by failing to challenge a conviction on a specific basis." *William Boatwright*, 2018 WL 2324369, at *8. In the appeal from the conviction proceedings, trial counsel contended that the evidence was insufficient to support the Petitioner's convictions, generally, because the "only evidence linking him to the crimes [was] the uncorroborated testimony of his alleged accomplice, James Cade." *William Ray Boatwright*, 2013 WL 7757787, at *6. Counsel argued that the photograph lineup was flawed and that the Petitioner's face was never seen during the incident, asserting that the Petitioner's identity was not sufficiently established by the evidence. This court's analysis of the sufficiency of the evidence was limited to whether codefendant Cade's identification of the Petitioner was supported by sufficient independent evidence, and this court concluded that the testimony of the victims supported the identity of the Petitioner. This court did not consider whether the State presented sufficient evidence of the individual elements of the conviction offenses because such an allegation was not raised on appeal. *See id.* at *6-7. To the extent that the post-conviction court denied relief on the basis that sufficiency of the evidence was raised in the appeal from the conviction proceedings, this court based its determination upon the Petitioner's limited challenge to the sufficiency of the identity evidence.

As relevant here, especially aggravated robbery is a robbery accomplished with a deadly weapon and in which the victim suffers serious bodily injury. T.C.A. § 39-13-403 (2018). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-403 (2018). A deadly weapon includes "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury[.]" *Id.* § 39-11-106(a)(5) (Supp. 2011) (subsequently amended). Serious bodily injury includes bodily injury that involves a substantial risk of death. *Id.* § 39-11-106(a)(34)(A).

In *State v. Owens*, 20 S.W.3d 634, 641 (Tenn. 2000), our supreme court determined that to sustain a robbery conviction, the State was required to establish that "the use of violence or fear must precede or be contemporaneous with the taking of property from the person." The defendant in *Owens* shoplifted from a retail store and fled the scene. After running approximately five blocks, the defendant stopped, turned toward a store employee who had given chase, and displayed a box cutter to the employee. *Id.* The court rejected the argument that the robbery statute included using force to retain property or to escape a crime scene. *Id.* at 640. Our supreme court determined that the evidence was insufficient to establish that the act of violence or fear preceded or was contemporaneous with the taking and that the act of violence or fear was "temporally remote." *Id.* at 641. As a result, the court modified the defendant's robbery conviction to theft. *Id.* at 641-42.

In *State v. Swift*, 308 S.W.3d 827, 828-31 (Tenn. 2010), our supreme court considered whether the location of the use of violence or fear was relevant to distinguishing between theft and robbery, and it concluded that "the temporal proximity between the taking of property and the use of violence or fear is the sole relevant factor" in determining whether a robbery occurred. The defendant in *Swift* shoplifted from a retail store by taking items and placing them inside his pants, and when store employees attempted to stop the defendant from leaving the store with the merchandise, the defendant swung a knife at the employees, causing them to back away from the defendant out of fear. *Id*. at 829. In determining that the evidence was insufficient to sustain an aggravated robbery conviction, the *Swift* court determined that the location of the use of violence or fear was irrelevant to whether a robbery occurred and that the critical inquiry was determining "when the taking was complete." *Id*. at 831. The *Swift* court determined that the taking was complete when the defendant "removed" and "concealed" items inside his pants, showing intent to deprive the retail store of its property, and that the use of violence "did not precede or occur contemporaneously with the removal and concealment" of the property. *Id*. As a result, the court determined that a robbery had not occurred and modified the conviction offense from aggravated robbery to aggravated assault." *Id*.

In *Eldridge Hill v. State*, No. W2009-01481-CCA-R3-PC, 2010 WL 4027728, at *1, 7 (Tenn. Crim. App. Oct. 14, 2010), *perm. app. denied* (Tenn. Feb. 17, 2011), this court considered a petitioner's allegation of ineffective assistance of counsel in that counsel failed to challenge the petitioner's especially aggravated robbery conviction on the basis that the robbery had been completed before the use of force resulting in serious bodily injury. The evidence showed that, while holding a gun to the victim's head, the petitioner took money from the victim and attempted to ascertain the location of the victim's marijuana. As the petitioner attempted to learn the location, the victim ran, and the petitioner "immediately" shot the victim. *Id*. at *1, 12. The *Eldridge Hill* court concluded, after considering *Owens* and *Swift*, that the act of violence, which resulted in serious bodily injury, occurred during the commission of the theft and that as a result, the evidence supported the especially aggravated robbery conviction. *Id*. at *12. The court determined that although the petitioner had taken the victim's money before the serious bodily injury was inflicted, the petitioner thought the victim was hiding marijuana and that the petitioner was attempting to take the marijuana when the victim ran and the petitioner shot him.[1] *Id*. We note that subsequent to *Eldridge Hill*, this court has applied the same analysis. *See State v. Harold Allen Vaughn*, No. W2016-00131-CCA-R3-CD, 2018 WL 1597421, at *4 (Tenn. Crim. App. Mar. 29, 2018) (concluding that the evidence was insufficient to show that serious bodily injury was inflicted before or during a

---

[1] Although filed after the Petitioner's August 2, 2011 trial, our supreme court discussed *Eldridge Hill* in *State v. Henderson*, 531 S.W.3d 687, 696-97 (Tenn. 2017). The court stated that this court correctly determined the evidence supported an especially aggravated robbery conviction based upon "not only the timing of the events at issue, but the [petitioner's] intent during the course of conduct." *Id*. at 697.

robbery because the defendant shot the victim approximately thirty seconds after the defendant had taken all the victim's property at gunpoint and after the defendant knew the victim did not have any additional property to take); *State v. Charles Steven Shivers*, No. M2009-02079-CCA-R3-CD, 2011 WL 6382552, at *7-8 (Tenn. Crim. App. Dec. 11, 2011) (concluding that the act of violence, which resulted in serious bodily injury, was contemporaneous with the taking when the victim was shot before the perpetrators "rifled through" the victim's pants and demanded that the victim identify the location of the victim's money), *perm. app. denied* (Tenn. Apr. 11, 2012); *see also State v. Jamaal Austin*, No. W2017-01632-CCA-R3-CD, 2018 WL 4849141, at *6 (Tenn. Crim. App. Oct. 5, 2018), *perm. app. denied* (Tenn. Feb. 25, 2019).

After the Petitioner's trial, a panel of this court in *State v. Antonio Henderson and Marvin Dickerson*, No. W2015-00151-CCA-R3-CD, 2016 WL 3390627, at *7 (Tenn. Crim. App. June 10, 2016), considered, in relevant part, the sufficiency of the evidence supporting an especially aggravated robbery conviction. The panel concluded that serious bodily injury could be inflicted before, during, or after the taking of property from a person. In reversing this conclusion, our supreme court determined that none of the language in the especially aggravated robbery statute supports the determination that serious bodily injury could be inflicted after the conclusion of the taking accomplished with a deadly weapon. *Henderson*, 531 S.W.3d at 697. In fact, our supreme court stated that this court's holding "adopted the continuous offense theory that the *Owens* court rejected." The court concluded that

> robbery accomplished with a deadly weapon is complete once the accused has completed his theft of the property he intended to steal. If the victim suffers serious bodily injury during the commission of the robbery, the offense may constitute especially aggravated robbery. *It is appropriate to consider the accused's conduct and intent when determining whether the underlying theft has been completed.*

*Id*. at 698. (Emphasis added). In applying *Owens* and *Swift*, the court reiterated that "the 'temporal proximity' required by the robbery offenses would focus . . . on the circumstances indicative of the defendant's conduct and the intent to determine whether, at the moment in time at issue, the defendant has definitively completed every element of the underlying theft," which includes an analysis of whether the defendant had completed the "theft of all the property he intended to steal." *Id.* at 696.

The parties do not dispute that Mr. Matthews suffered serious bodily injury. Therefore, the critical inquiry in this case is whether trial counsel provided deficient performance by failing to challenge the sufficiency of the evidence of the Petitioner's especially aggravated robbery conviction on the basis that the act of violence or force, which resulted in serious bodily injury to Mr. Matthews and elevated the charged offense to especially aggravated robbery, occurred after the taking was complete.

The trial evidence reflects that multiple armed men "rushed" into Ms. Hines's apartment, that the men searched Mr. Matthews for money, that the men were unsuccessful in locating money, and that Mr. Matthews retrieved $200 from his pocket and threw the money on a table. Ms. Thompson testified that she hid behind a speaker during the incident but heard the men rummaging through the apartment before Mr. Matthews retrieved the money from his pocket. Ms. Thompson then heard one man instruct the others to take cigarettes before she heard the "sound of feet moving away." After a period of silence, Ms. Thompson heard one man say, "[S]orry I got to do this to you, Cuz." Ms. Hines similarly testified that "just before" the men left, she heard one man say, "I hate to do you like this, Cuz." Ms. Hines said that she next heard Mr. Matthews moaning.

Ms. Williams witnessed the entire incident from her vantage point and testified that after the men forced their way into the apartment, she stood against a wall. She saw two men run to the back of the apartment while two men remained in the front of the apartment. She stated that the men in the back made noises as though they were "tearing rooms apart," that one of the men who remained in the front asked her questions, and that the two men in the back returned to the front. Ms. Hines said that after the two men returned to the front of the apartment and "the men were heading out the door," the man who had asked her questions "turned back" and said, "I hate to do this to you, Cuz," before assaulting Mr. Matthews. Ms. Williams testified that "[Mr.] Matthews had already given his money" to the Petitioner before the assault. In addition to the cigarettes and Mr. Matthews's money, the victims realized after the incident that a camcorder and a PlayStation console had been taken. Codefendant Cade testified that the Petitioner admitted striking Mr. Matthews on the head with a pistol "so he couldn't remember nothing" because Mr. Matthews "had gotten too close" when the Petitioner took the money.

As a result, the trial evidence reflects that the perpetrators had taken all of the property they intended to take and were leaving the apartment when the Petitioner turned and struck Mr. Matthews. The taking was complete at the time of the force used to inflict serious bodily injury. Likewise, the intent behind the force was not intended to accomplish a theft or taking. The intent of the force was to prevent Mr. Matthews from identifying the Petitioner and, therefore, to prevent the Petitioner's prosecution.

Furthermore, we disagree with the post-conviction court's determination that the Petitioner's reliance on *Owens* and *Swift* is misplaced. Although the offenses in *Owens* and *Swift* occurred in retail establishments, *Swift* made clear that the location of where the events occur is irrelevant. *Swift*, 308 S.W.3d at 831. The critical inquiry of any robbery offense is "when the taking was complete." *Id*. *Owens* and *Swift* had been published before the Petitioner's trial and provided a legal basis for challenging the sufficiency of the evidence of all robbery offenses. Furthermore, this court's opinion in *Eldridge Hill*,

applying the principles of *Owens* and *Swift* to especially aggravated robbery and to the very issue in this case, was likewise available at the time of the Petitioner's trial.

The record reflects that trial counsel testified at the initial post-conviction hearing that he was aware the robbery statute stated the force or act of violence must precede or be concurrent with the taking. However, when asked about his familiarity with *Owens* and *Swift*, counsel stated that "he had not been presented with that issue and was unaware of the issue at the time of the Petitioner's trial." Counsel testified that the critical issue and the chosen defense theory was the identity of the Petitioner as one of the perpetrators, not whether the elements of each offense were established beyond a reasonable doubt.

After this case was remanded to the post-conviction court, trial counsel's initial testimony relative to his knowledge of *Owens* and *Swift* was vague, at best, but counsel admitted he was not aware of any issue related to the timing of the taking and the force, which resulted in serious bodily injury. Rather, counsel's focus was only the Petitioner's identity. Counsel rejected any notion that the timing of the force, which resulted in serious bodily injury, was an issue in this case because the incident occurred inside an apartment. However, based upon *Swift*, this is an inaccurate statement of the law. Furthermore, counsel admitted that he did not analyze the timing between the force resulting in serious bodily injury and the taking until after the initial post-conviction hearing and the previous appeal.

As a result, the record does not support the post-conviction court's determination that trial counsel made a strategic decision not to challenge the sufficiency of the evidence based upon the failure to prove that the use of force, which resulted in serious bodily injury, occurred before the taking was complete. We note that although the defense theory at the trial focused on the Petitioner's identity, nothing prevented the defense from challenging the sufficiency of the convicting evidence as a matter of law after the State had rested its case-in-chief in a motion for a judgment of acquittal, after the trial in a motion for a new trial, and on appeal, if necessary. Counsel had an obligation to ensure that the State proved beyond a reasonable doubt each element of the offense, and counsel's failure in this regard resulted in deficient performance. Based upon the state of the law at the time of the trial, which included *Owens*, *Swift*, and *Eldridge Hill*, the Petitioner has shown that counsel's deficient performance resulted in prejudice because a reasonable probability exists that the trial court or this court would have acted in the Petitioner's favor if the issue had been raised in the conviction proceedings.

In reaching this conclusion, we have not overlooked the post-conviction court's determination that trial counsel could not be faulted for not having the benefit of the most recent supreme court decision in *Henderson*. However, *Henderson* does not create new law but rather applies the legal principles in *Owens* and *Swift*, and it approves of this court's opinion in *Eldridge Hill*, regarding the timing and intent of the act of violence, as

required for any robbery offense, in the context of especially aggravated robbery. The State was required to show at the time of the trial that the act of violence, which resulted in serious bodily injury, occurred before or during the taking of the property. The evidence does not support such a conclusion in this case. The witness testimony shows that the taking had been completed and that the men were leaving the apartment when the Petitioner turned and struck Mr. Matthews. The assault was not committed to effectuate the taking of Mr. Matthews's money or the additional property because the taking was complete at the time Mr. Matthews was assaulted.

We likewise reject the State's argument that, at the time of the Petitioner's trial, the question of when the serious bodily injury must occur had not been resolved. This argument lacks merits for three reasons. First, *Owens* and *Swift*, as the State notes in its brief, addresses the temporal connection between the taking and the act of violence in order for theft to constitute robbery. The State asserts, though, that *Owens* and *Swift* did not address the timing of the infliction of the bodily injury. Although our supreme court did not explicitly address when serious bodily injury must be inflicted in an especially aggravated robbery until *Henderson*, logic necessitates that bodily injury, serious or otherwise, cannot be inflicted without an act of violence or the use of force. Without an act of violence, serious bodily injury cannot be inflicted, and any robbery offense requires that the act of violence precede or be contemporaneous with a taking pursuant to *Owens* and *Swift*. The relevant distinction between robbery and especially aggravated robbery is that the force or act of violence results in serious bodily injury, not when serious bodily injury occurred. Therefore, the force or violence resulting in serious bodily injury must occur before the completion of the theft. *Henderson* states this principle explicitly and reiterates that the focus is on the temporal relationship between the act of violence, which in this case resulted in serious bodily injury, and the completion of the taking. Second, *Eldridge Hill* analyzed *Owens* and *Swift* in the context of especially aggravated robbery, which was filed before the Petitioner's trial, and reached the same conclusion that our supreme court would later adopt in *Henderson*. Third, at the time of the trial, no conflict in the law existed.

Furthermore the State's reliance on *State v. Mario Merritt*, No. W2003-02868-CCA-R3-CD, 2004 WL 2726030 (Tenn. Crim. App. Nov. 30, 2004), to show that the "timing issue" of the serious bodily injury had not been resolved at the time of the Petitioner's trial is misplaced. The defendant in *Mario Merritt* attempted to leave a retail store without paying for various items he had in his possession. When a store employee confronted the defendant upon leaving, the defendant displayed a firearm and ordered the employee to get back and to get on the floor. A panel of this court upheld the defendant's conviction for aggravated robbery after determining that the act of violence was contemporaneous with the taking. *Id*. at *1-4. However, the *Mario Merritt* opinion was filed six years before *Swift*, which made clear that the act of violence or fear, such as displaying a weapon, must occur before the taking is complete. In applying *Swift* to the facts of *Mario Merritt*, the theft had been completed at the time of the act of violence or

fear. In any event, at the time of the Petitioner's trial, the law was clear that the act of violence or fear required for any robbery offense must occur before the taking is complete, and the act of violence must precede the infliction of any injury.

We conclude that the record does not support the post-conviction court's determinations and that the Petitioner has established his claim of ineffective assistance of counsel. Therefore, the Petitioner is entitled to a limited motion for a new trial, at which time counsel is permitted to raise his sufficiency of the evidence claim relative to the especially aggravated robbery conviction for the trial court's consideration.

## II.    Aggravated Robbery

The Petitioner contends that trial counsel provided ineffective assistance by failing to argue that the aggravated robbery conviction relative to Ms. Williams should have been dismissed. The Petitioner argues that $200 cash, a camcorder, cigarettes, and a PlayStation console were taken and that Ms. Williams did not possess the property when it was stolen. The State responds that counsel did not provide ineffective assistance because Ms. Williams constructively possessed the camcorder and cigarettes by virtue of her presence inside the apartment.

The trial evidence reflects that Ms. Williams was a guest inside the apartment. The camcorder belonged to Ms. Hines, the owner of the apartment, and the evidence does not establish to whom the cigarettes or the PlayStation console belonged. Likewise, the evidence did not establish from where the PlayStation console, the camcorder, and the cigarettes were taken during the incident. Therefore, the critical inquiry is whether Ms. Williams constructively possessed the PlayStation console, the camcorder, and the cigarettes based upon her presence inside the apartment.

A "taking from the person may be either actual or constructive. It is actual when the taking is immediately from the person and constructive when in the possession of the victim or in the victim's presence." *State v. Miller*, 608 S.W.2d 158, 160 (Tenn. 1980). "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). "The mere presence of a person in an area where [an object is] discovered is not, alone, sufficient to support a finding that the person possessed the object." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987).

A robbery can involve the taking of property from the physical body of a person, in which a person has actual possession of the property, or from a person's immediate presence or the general area in which the victim is located, in which the person has constructive possession of the property. *See Jones v. State*, 383 S.W.2d 20, 24 (Tenn.

1964) (concluding that the theft of items while the victim was restrained in another room constituted robbery); *Morgan v. State*, 415 S.W.2d 879, 881 (Tenn. 1967) (concluding that the "fact the goods and money were not taken from the person of the victims is no defense" to robbery when the victims were restrained while their house was ransacked); *State v. Howard*, 693 S.W.2d 365, 368 (Tenn. Crim. App. 1985) (citing *Jones*, 383 S.W.2d at 20; *Miller*, 608 S.W.2d at 158); *see also State v. Nix*, 922 S.W.2d 894, 900 (Tenn. Crim. App. 1995) (detailing the limitations of the phrase "from the person of another" in Tennessee jurisprudence).

This court has concluded that in cases of multiple robbery convictions, "the proper unit of prosecution for robbery in Tennessee is the number of takings, i.e. the number of thefts," and that defendants who put multiple victims in fear during the course of one theft may be convicted of aggravated assault in addition to the robbery conviction to acknowledge each victim. *State v. Franklin*, 130 S.W.3d 789, 797-98 (Tenn. Crim. App. 2003); *see State v. Michael Lebron Branham*, No. E2014-02071-CCA-R3-CD, 2016 WL 106603, at *11 (Tenn. Crim. App. Jan. 8, 2016) (holding that convictions for aggravated robbery of a male victim and aggravated assault of a female victim were proper when money was only taken from the male victim); *see also* T.C.A. § 39-13-101, -102 (2018).

The trial evidence reflects that although Ms. Williams was inside the apartment at the time of the incident, the evidence does not support a conclusion that Ms. Williams had any interest in or right to the items taken from the apartment, and her presence as a guest alone cannot establish that she had a greater right to possess the items than the Petitioner. *See State v. Christopher Shane Harrell*, No. E2005-01531-CCA-R3-CD, 2007 WL 595885, at *2, 11 (Tenn. Crim. App. Feb. 26, 2007) (concluding that the victim of an especially aggravated robbery had constructive possession of a truck belonging to and being driven by her son because the truck was titled in her and her son's names); *see also State v. Joel Christian Parker*, No. M2001-00773-CCA-R3-CD, 2002 WL31852850 at *2-3 (Tenn. Crim. App. Dec. 18, 2002) (concluding that pawn shop employees have a possessory interest in the store items taken at gunpoint). Likewise, the lack of trial evidence regarding from where the items were taken precludes a conclusion that the items were taken from her immediate presence and control.

Although the State asserts that Ms. Williams had a greater property right or interest in the camcorder and the cigarettes than the Petitioner, the evidence does not show that she had any authority to exercise control over the property, that she had any interest or right to the property, and that the property was within her immediate control. Ms. Williams was a bystander, and she had no more or less interest in the property than the Petitioner. Her mere presence during a home invasion does not create an interest superior to the Petitioner or anyone else. As a result, the record does not establish that Ms. Williams constructively possessed any of the property taken during the incident.

Trial counsel testified regarding the aggravated robbery conviction that he assumed everyone inside the apartment owned everything inside the apartment, although counsel knew Ms. Williams had been a guest at the time of the incident. Counsel thought that Ms. Williams had constructive possession of the items taken because she was inside the apartment, which is an inaccurate statement of the law. Although the chosen defense was mistaken identity, nothing prevented the defense from challenging the sufficiency of the convicting evidence as a matter of law after the State had rested its case-in-chief in a motion for a judgment of acquittal, after the trial in a motion for a new trial, and on appeal, if necessary. Counsel had an obligation to ensure that the State proved beyond a reasonable doubt each element of the offense, and counsel's failure in this regard resulted in deficient performance.

As a result, the record does not support the post-conviction court's determination that trial counsel provided the effective assistance of counsel. Based upon the state of the law, the Petitioner has shown that counsel's deficient performance resulted in prejudice because a reasonable probability exists that the trial court or this court would have acted in the Petitioner's favor if the sufficiency issue had been raised in the conviction proceedings. The Petitioner has established his ineffective assistance claim. Therefore, the Petitioner is entitled to a limited motion for a new trial, at which time counsel is permitted to raise his sufficiency of the evidence claim relative to the aggravated robbery conviction for the trial court's consideration.

In consideration of the foregoing and the record as a whole, we reverse the judgment of the post-conviction court. We remand this case to the trial court for a limited motion for a new a trial at which time counsel is permitted to raise the sufficiency allegations addressed in this appeal and any additional issues that might arise in connection with these limited issues.

_____
ROBERT H. MONTGOMERY, JR., JUDGE